## BLACKMAN v. STRIKER.

### (Supreme Court, General Term, First Department.    December 16, 1892.)

1. PARTITION UNDER WILL—AGREEMENT BY DEVISEES—CONSTRUCTION.
   Testator's devisees, before apportioning his land under the will, which directed it to be divided in equal parts, and each part selected by lot, signed an agreement that whereas, on the part entitled "lot 2" there is a family burial ground, "whoever shall draw said lot of land, and shall hereafter sell that, the said burying ground shall be reserved in the deed to the purchaser" for the purpose of burying the dead. *Held,* that the title to the land embraced in the burying ground went with lot 2 to the devisee who took such lot.

2. RESERVATION IN DEED—CONSTRUCTION.
   Where such devisee subsequently conveyed lot 2 by particular description, the deed "saving, excepting, and reserving unto the heirs" of testator "and to their and each of their heirs * * * the family burying ground," describing the same, the fee of the burial ground passes to the grantee, subject to the easement created in favor of the heirs.

Exceptions from circuit court, New York county.

Ejectment by John E. Blackman against Elsworth L. Striker. From an order directing a verdict in favor of defendant, and ordering exceptions to be heard in first instance at general term, plaintiff excepts. Exceptions overruled.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Hoadly, Lauterbach & Johnson, (James L. Bennett, Chas. Haldane, and George Hoadly, of counsel,) for the motion.

George Bliss, opposed.

VAN BRUNT, P. J.    This action was brought against the defendant, Striker, and his tenants to recover possession of a lot of land at the southwest corner of Ninth avenue and Fiftieth street in the city of New York. The facts in relation to the question involved are substan-

tially undisputed, and are as follows: John Hopper, who died in 1778, was the owner, at the time of his decease, of a farm in the out ward of the city of New York, and by his will, dated October 12, 1778, and proved in August, 1779, he devised all his land in the out ward equally to his sons Matthew, John, Andrew, and Yallis, his daughter Jemima Horne, and the four children of his deceased son Wyssell Hopper. He ordered that after his decease the farm should be divided into six equal portions by competent and disinterested persons, one of which parts should belong to his said son Matthew, one to his said son John, one to his said son Andrew, one to his said son Yallis, one to his said daughter Jemima, and one to the four children of his deceased son Wyssell. The devisees were to determine by lot which parcel should belong to each in severalty after a survey, map, and a chart or map in partition had been prepared. Accordingly, in 1782, a map in partition was prepared, and before drawing for their allotments the devisees entered into an agreement as to the construction of lanes through the property, the removal of fences, and the disposition of certain buildings, and in respect to a family burying ground, which was located on the farm, and embraced within lot 2. The recital as to the burying ground is as follows: "Whereas, on the lot numbered 2 there is erected a burial ground, now inclosed with a good fence, that the same forever hereafter remain, continue, and be for the family burying ground, and that whoever shall draw said lot of land, and shall hereafter sell that, the said burying ground shall be reserved in the deed to the purchaser for the above-named laudable purpose of burying, with full liberty to pass and repass as occasion shall require." · Matthew Hopper, the eldest son, drew lot No. 2, within which was situated the said burying ground. All the devisees conveyed to Yallis Hopper, to Andrew Hopper, to John Hopper, and to John Horne, the husband of Jemima, the several allotments drawn by them. But there is no evidence of any deed to the minor children, nor of any deed to Matthew Hopper. In 1788, Matthew Hopper conveyed to John Hopper, and to his heirs and assigns forever, the lot of land which had been assigned to him, "together with all and singular the garden, trees, ways, paths, passages, * * * emoluments, and hereditaments whatsoever to said lot of land belonging or in any wise appertaining, or which now or formerly have been accepted, reputed, taken, known, used, occupied, or enjoyed to or with the same as part or parcel thereof, or any part thereof, saving, excepting, and reserving unto the heirs of said John Hopper, deceased, and to their and each of their heirs, out of this present demise, all that burying ground now in fence, consisting of 48 feet square parcel of said lot of land, and commonly called the 'family burying ground,' with free ingress, egress, and regress into, on, and from the same, to bury the dead," etc. Without mentioning in particular the method, to whatever rights were acquired by John Hopper in this plot of land included in the burying ground the defendant, Striker, succeeded, and, he having taken possession of the same, the plaintiff, claiming under conveyances from the heirs of Matthew Hopper, brought this action in ejectment.

The only question which it is necessary to consider upon this motion is the effect of the alleged exception in Matthew Hopper's deed to his brother John. A solution of this question depends upon the construction of the conveyances, and the evident intention of the parties in the provision therein contained. That the burial ground in question was included in lot No. 2, and was so understood by the heirs of John Hopper, and that the title thereto was intended to pass by the allotment to Matthew Hopper, seems to be conclusively evidenced by the language of the agreement entered into between all the parties interested in the land of John Hopper, deceased. The agreement recites that "whereas, on the lot No. 2 there is erected a burial ground, * * * whoever shall draw said lot of land, and shall hereafter sell that, the said burying ground shall be reserved in the deed to the purchaser for the above-mentioned laudable purpose of burying," etc.; this language clearly showing that the title to the land embraced in the burying ground went with lot No. 2. Consequently, if Matthew Hopper obtained the title to lot No. 2, he also obtained the title to the fee of the burying ground. That this was the understanding is further evidenced by the deed from Matthew to John Hopper, by which lot No. 2 is conveyed to John Hopper by particular description; the deed further continuing, "saving, excepting, and reserving unto the heirs of said John Hopper, deceased, and to their and each of their heirs, out of this present demise, all that burying ground now in fence, consisting of 48 feet square parcel of said lot of land and commonly called the ' family burying ground,' with free ingress, egress, and regress into, on, and from the same, to bury the dead," etc. By this clause there was a clear attempt to make a reservation in favor of the heirs of a common ancestor for the purposes of burial. There was evidently no intention but what the grantee was to hold possession of the lot in question subject to the easement of burial in favor of the heirs of the original John Hopper. There was no intention to reserve the fee, but simply the easement of burial for the purpose of carrying out the agreement entered into by the heirs of said John Hopper. And that this was the intention was further evidenced by the fact that the reservation was not of anything to the grantor, but to others as well as himself; in fact of all who came under the designation of "heirs of John Hopper, deceased." If there had been any intention to except the fee of the burial ground from the grants, the exception would have been to Matthew Hopper, the grantor, and there would not have been an attempt to reserve a right to others; this being the evident intention, as manifested by the conveyances which passed, and the language used. It is clear that the plaintiff, from the conveyances from the heirs of Matthew Hopper, took no right to bring this possessory action upon the ground of a title superior to that of the defendant, Striker, who, as the successor of the grantee in Matthew Hopper's deed, was entitled at least to the possession of the premises in question. The exceptions should be overruled, and judgment ordered for defendant, with costs. All concur.